# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE VIGIL,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:16-cv-01677-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 20, 21, 22) |

## I.

## INTRODUCTION

Plaintiff Yvonne Vigil ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from polyarticular psoriatic arthritis, rheumatoid arthritis, and sinus allergies. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted and Defendant's cross-motion for summary judgment shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 11, 12.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on December 4, 2012. (AR 84.) Plaintiff's application was initially denied on May 17, 2013, and denied upon reconsideration on October 21, 2013. (AR 98-101, 105-109.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on March 5, 2015. (AR 33-73.) On April 28, 2015, the ALJ found that Plaintiff was not disabled. (AR 15-27.) The Appeals Council denied Plaintiff's request for review on September 12, 2016. (AR 1-3.)

## A. Hearing Testimony

Plaintiff testified at the March 5, 2015 hearing. (AR 37-65, 72.) Plaintiff was born on October 17, 1967, and was 47 years old on the date of the hearing. (AR 37.) Plaintiff lives with her parents. (AR 37.) Plaintiff's father has some Alzheimer's. (AR 56.) Plaintiff is 5 foot 4 inches tall and weighs 172 pounds. (AR 37.) Plaintiff is divorced and receives food stamps and financial support from her parents. (AR 38.) Plaintiff previously had her driver's license revoked in 1998, but has no restrictions on her driver's license at this time. (AR 38.)

Plaintiff graduated from high school and received her phlebotomist certification in 2007. (AR 40.) She has never worked as a phlebotomist because shortly after receiving her certification she began dealing with the problems in her hands and feet. (AR 40.) She applied for jobs, but it did not work out. (AR 40-41.) Plaintiff was told that it was not in her best interest to do only phlebotomy because she would be dealing with sick people. (AR 41.) Plaintiff tried to work in the prison, but they said no. (AR 41.)

Plaintiff has a driver's license and drives about eight times per month. (AR 38.) Plaintiff drives to the grocery store or doctor, and to pick up prescriptions at Wal-Mart. (AR 39.) In a typical day, Plaintiff will wake up about 11:30 and take her medication. (AR 54.) She gets up and has breakfast and then lies back down for about 40 minutes. (AR 54.) Plaintiff gets up, showers, and gets dressed. (AR 55.) Plaintiff will do laundry, dishes, and visit with her dad. (AR 55.) Plaintiff sits up or lies back down to watch television. (AR 55.) Plaintiff lies down if

she did not sleep the night before. (AR 55.) Sometimes she just lies down for about 40 minutes with her eyes closed to give her body a rest. (AR 55-56.) Plaintiff will make her father a sandwich or salad for lunch. (AR 56.) Around 5:30 she takes her medication and then will visit with her mom, go on the internet, and do a little exercise to keep her joints moving. (AR 56.) She might go out grocery shopping or to Wal-Mart, or do whatever errands she needs to run because that is when she feels her best. (AR 56.) At night she watches television. (AR 56.)

Plaintiff used to read, but she does not read anymore. (AR 57.) When Plaintiff is on the internet she will look at Yahoo and get on Facebook. (AR 57.) Plaintiff is able to stand a couple of hours, but limits herself to one hour because her feet hurt. (AR 57.) Plaintiff is able to walk, but not as much as she used to. (AR 57.) Plaintiff can walk three city blocks. (AR 57-58.) She could not walk that far if she is having a bad day. (AR 58.) Plaintiff's hands are currently hurting so she can only lift five pounds. (AR 58.) When they are not bad she can lift ten pounds. (AR 58.) Plaintiff is able to reach and can pick things up, but would not pick things up for a long period of time. (AR 58.) Plaintiff cannot hold a cell phone to talk to someone. (AR 58.) It is hard for Plaintiff to write. (AR 59.) Plaintiff drops everything because she does not have a good grip. (AR 59.)

Plaintiff has difficulty sleeping two to three nights per week, but it has a lot to do with the weather. (AR 60.) Plaintiff tried medication to help her sleep but she was allergic to it. (AR 60.) She wakes up because her hands or feet are hurting. (AR 60.) Plaintiff can sleep for three hours or so. (AR 60.) Plaintiff is currently taking Stelara for her psoriatic arthritis. (AR 61.) Plaintiff can see that the medication is working on her psoriatic arthritis. (AR 61.) Plaintiff started taking it ten days ago and it is not working on her joints yet. (AR 61.) The doctor told her it would take another injection to see if it would help. (AR 61.) Plaintiff has been on numerous medications that help at first but ten months down the line they do not work anymore. (AR 61-62.) Plaintiff then has to stop the medication for thirty days and start on another medication. (AR 62.) Sometimes it takes longer than thirty days to get insurance authorization. (AR 62.)

Plaintiff is able to manage 20 days out of the month and does not do well 10 days per

month. (AR 62-63.) Plaintiff's condition would allow her to work on the twenty days per month that it is not flared up. (AR 64.) But she will always have random flare ups even when her condition is controlled by medication. (AR 64.) The worst thing that keeps her from working when she has flare ups is the pain in her hands. (AR 64.) When her hands are hurting Plaintiff does very little. (AR 65.) Her hands will ache and throb and will be stiff and swollen. (AR 65.)

Plaintiff received Worker's Compensation benefits in 1998 for a hernia and in 2007 for her hands and feet because she thought she had a work related injury. (AR 39.) It turned out to be psoriatic arthritis. (AR 39-40.) Plaintiff received state disability for one year after she left Wal-Mart from September 2012 through September 2013. (AR 41.) Plaintiff stopped working at Wal-Mart because she had struggled for quite a while with her feet, hands, and back, but once it hit her knees she could not do it anymore. (AR 42.) They were working Plaintiff a lot and after she was on her feet on the cement floor for ten hours her feet would throb, and her knees started to swell. (AR 42.) When Plaintiff started having to ice her knees she threw in the towel. (AR 42.) Plaintiff would go into work and they would let her go home early because she had worked there a long time. (AR 43.)

Plaintiff started working at Wal-Mart as a stocker. (AR 43.) She would open boxes and throw them into rollers. (AR 43.) On average, Plaintiff would lift from one to ten pounds. (AR 44.) Plaintiff then moved to FID where she would scan freight with a hand held scanner, place labels on top of boxes, and the boxes would go on a conveyer. (AR 45.) Plaintiff next worked in quality assurance for about a year. (AR 45.) That entailed a lot of computer work and walking. (AR 45.) Plaintiff would get on big equipment and go up high to look at the freight and bring freight down. (AR 45-46.) On average Plaintiff would lift from one to ten pounds, but occasionally she would lift twenty-five pounds. (AR 46.)

Plaintiff moved to the position of office clerk which involved doing reports on the computer. (AR 46.) She would be dealing with manifests, putting them in packets, stapling them, and sending them to the dock. (AR 46.) There was no weight lifting in this position. (AR 47.) Plaintiff went back to quality assurance a second time in a different area. (AR 47.) Plaintiff would only lift about five pounds in that position. (AR 47.) She would verify what was

inside cases.  (AR 48.)

Plaintiff is unable to work because she has a lot of random flare ups of her psoriatic arthritis.  (AR 48.)  Plaintiff's flare ups occur when she has an infection, or they can be a side effect of medication.  (AR 48.)  Stress will also cause a flare up.  (AR 63.)  She consistently has flare ups nine to ten days per month, more if she is between medication.  (AR 48-49, 62.)  Her body will start aching and her hands always hurt, but they will hurt more.  (AR 49.)  Her hands and feet will swell and her whole body will hurt from her neck to her toes.  (AR 49.)  The flare ups do not last for four or five days, she might have one in the morning and not be able to get out of bed and the next day she can get up.  (AR 48.)

Changes in the weather cause her to get body aches like she has the flu.  (AR 49.)  When she has a flare up her pain will be an 8 out of 10.  (AR 49.)  If she is not on medication at the time it would be 9 out of 10.  (AR 49.)  When she has a flare up Plaintiff just stays in bed.  (AR 50.)  But she cannot just stay in bed because she will stiffen up so she has to get up and move around.  (AR 50.)  She will just sit or lie down.  (AR 50.)  Plaintiff takes Tramadol daily for pain.  (AR 50.)  Plaintiff takes Percocet when her pain is acting up, and she was taking Percocet at the time of the hearing because she was hurting.  (AR 51.)  The Tramadol does control her pain but it gets her wired.  (AR 51.)  Plaintiff has a lot of fatigue and she does not take the Tramadol at night because she would not be able to sleep.  (AR 51.)  The Tramadol makes her feel more alert and awake.  (AR 52.)  Without it she is fatigued, so in addition to helping the pain, it helps her stay awake.  (AR 52.)

Plaintiff's psoriatic arthritis causes her to have severe joint pain in her neck, hands, lower back, and feet.  (AR 52-53.)  She has pain in her knees, but it is not as bad.  (AR 52.)  Plaintiff went to the emergency room one time since August 2012.  (AR 53.)  She thought something had bit her on her foot, but it turned out to be a reaction to her medication.  (AR 65.)  Plaintiff did have some physical therapy in her hands but that was before they realized it was psoriatic arthritis.  (AR 53.

A vocational expert, Thomas C. Dachelet, also testified at the hearing.  (AR 65-71.)
/ / /

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 3, 2012.
- Plaintiff has the following severe impairments: polyarticular psoriatic arthritis; rheumatoid arthritis; and sinus allergies.
- Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand and/or walk 6 hours in an 8 hour workday. Plaintiff's capacity most closely approximates light work as defined in 20 C.F.R. 404.1567(b) except that she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. She can occasionally stoop, crouch, and crawl. She can frequently finger and handle bilaterally. Plaintiff must avoid concentrated exposure to temperature extremes, wetness, humidity, and dust.
- Plaintiff is capable of performing past relevant work as a quality assurance shipping checker and traffic clerk as the work does not require the performance of work-related activities precluded by her RFC.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from August 3, 2012, through the date of this decision.

(AR 20-27.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step

sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

1 Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

The sole issue on appeal is whether the ALJ provided clear and convincing reasons to reject Plaintiff's subjective pain and symptom testimony. Plaintiff contends that the ALJ improperly considered Plaintiff's daily activities without addressing that Plaintiff claims to have bad days nine to ten days per month that do not allow her to do such activities. Plaintiff argues that since her daily activities are not a clear and convincing reason to reject her credibility, the only other reason provided by the ALJ, the objective medical evidence, is not sufficient as a matter of law to support the adverse credibility finding.

Defendant counters that the ALJ properly considered Plaintiff's conservative course of treatment and very few objective findings in addressing her credibility. Further, Defendant argues that the ALJ properly considered the opinions of several doctors that Plaintiff was not disabled. Lastly, Defendant contends that the ALJ properly considered that Plaintiff's daily activities did not support the degree of disabling limitations.

Plaintiff responds that as no cure exists for psoriatic arthritis the only treatment is medication and joint replacement. Therefore, conservative treatment is not a clear and convincing reason to reject Plaintiff's credibility. Further, Plaintiff argues that the fact that several doctors found Plaintiff to be not disabled is the same as the objective medical evidence. Finally, Plaintiff replies that given the facts of this case, Plaintiff's daily activities are not a clear and convincing reason to find her not credible.

///

///

///

### A. The ALJ Did Not Provide Clear and Convincing Reasons to Reject Plaintiff's Subjective Pain and Symptom Testimony

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible. (AR 22.)

The ALJ cited several reasons to discredit Plaintiff's testimony. Therefore, the Court shall address the reasons stated by the ALJ to determine if the ALJ provided clear and convincing reasons to find Plaintiff's testimony not credible.

1. Daily Activities

The ALJ noted that Plaintiff reported that she does chores, attends to her personal care needs, and prepares meals such as salads. (AR 25.) Plaintiff testified that she wakes at 11:30 a.m., takes her medication, drinks her coffee and eats. (AR 25.) Plaintiff then lies back down for about 40 minutes before taking a shower and getting dressed. (AR 25.) Plaintiff does some chores, such as laundry and dishes, visits with her father, lies down, and watches television. (AR 25.) Plaintiff prepares simple meals and takes her pain medication at 5:30 p.m. (AR 25.) She spends time on the internet, visits with her mother, exercises, stretches, moves around, and sometimes goes shopping. (AR 25.) Plaintiff drives about eight times per month to the grocery store, doctor's appointments, and Wal-Mart. (AR 25.) The ALJ found that Plaintiff's reported daily activities were not consistent with an individual suffering from debilitating medical conditions that would reasonably preclude all work-related activities. (AR 25.) By her own reports Plaintiff is able to maintain a fairly active lifestyle despite her allegations of debilitating impairments. (AR 25.)

While Plaintiff did testify that when she is on medication that helps her arthritis she would be able to work on her good days (AR 64), she also testified that she has nine to ten days per month where her symptoms flare up, her entire body aches, and she has to stay sitting or lying down (AR 49-50, 53). Plaintiff has flare ups more often when she is between medications. (AR 62.) During the times that Plaintiff has flare ups she is mostly unable to work because her

hands hurt non-stop. (AR 64-65.) Her hands ache, throb, and become stiff and swollen. (AR 65.)

The ALJ noted that Plaintiff maintained a fairly active lifestyle despite her allegations of disabling pain, but the mere fact that Plaintiff performs certain daily activities such as shopping, driving a car, or limited exercise, does not in any way detract from her credibility as to her overall disability. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Only where the level of activity is inconsistent with the claimed limitations would Plaintiff's daily activities have a bearing on her credibility. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Here, Plaintiff testified that she has flare ups nine to ten times per month and on these days she is unable to work. The ALJ did not address how Plaintiff's ability to engage in a fairly active lifestyle on her good days detracted from her credibility in regards to her testimony that she has days in which she is more limited. Therefore, the Court finds that Plaintiff's daily activities are not a clear and convincing reason to reject her credibility.

2. Conservative Treatment

Defendant argues that the ALJ properly considered that Plaintiff had only received conservative treatment. Plaintiff responds that there is no cure for psoriatic arthritis and treatment includes medication and injections which Plaintiff has received. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ noted that Plaintiff has not required hospitalization, surgeries, or assistive devices. (AR 21.) Plaintiff has not visited the emergency room since 2012 when she experienced a reaction to medication. (AR 21.) Overall, the record documents only very conservative treatment. (AR 21.) The ALJ found that treatment notes indicate very conservative treatment.[2] (AR 22.)

---

[2] The ALJ also stated that while Plaintiff's psoriatic arthritis symptoms are recurrent and chronic the record indicates that her chronic pain is manageable with medications. (AR 21.) Neither of the parties address this in their briefs. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for" social security benefits. Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). The record referenced is the February 25, 2009 Agreed Medical Examination by Dr. Orcutt for Plaintiff's Workmen's Compensation claim. (AR 423-453.) The record states that Plaintiff notes good pain relief with Vicodin. (AR 425.) However, at the time of the hearing Plaintiff was not taking Vicodin, and the parties have

Here however, Plaintiff has failed multiple treatments for her psoriatic arthritis. (AR 61-62, 641.) She has been prescribed narcotic pain medication and received injections for pain and inflammation and continues to complain of pain and reoccurrence of symptoms. (AR 642, 644.) Plaintiff frequently has complained of pain, stiffness, and swelling and has been tried on numerous medications to control her symptoms. (AR 561, 564, 567, 570, 573, 577, 606, 612, 615, 618, 638.)

The record does not support a finding that the treatment Plaintiff received for her psoriatic arthritis discredits her symptom testimony. Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).

### 3. Objective Medical Evidence

Plaintiff argues that the sole remaining reason to reject her credibility, the objective medical evidence, is insufficient as a matter of law to reject her credibility. The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ does not err in considering the lack of objective medical evidence to support a claimant's subjective pain testimony, but it cannot be the sole basis for an adverse credibility finding. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The Social Security regulations state that objective medical evidence is a useful indicator to assist in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(2). However, a claimant's statements about the intensity and persistence of his pain or other symptoms cannot be rejected solely because the available objective medical evidence does not substantiate the statements. 20 C.F.R. § 404.1529(c)(2).

Defendant argues that the ALJ permissibly rejected Plaintiff's allegations based on several medical opinions that found she was not disabled. Plaintiff argues that this is the lack of support in the medical record which is the same as lack of objective medical evidence. While it

---

presented no argument or cited to any evidence in the record as to how well controlled Plaintiff's symptoms are when she is on effective medication.

12

1 is arguable whether the ALJ discredited Plaintiff on this basis, this reason would coincide with
2 the ALJ's reason that Plaintiff's testimony is not supported by the objective medical evidence
3 since the opinions are based on the objective evidence. Therefore, this is not a separate and
4 distinct reason, and as stated above, the ALJ cannot discredit Plaintiff's pain testimony solely
5 because it is found not to be supported by the objective medical evidence. <u>Rollins</u>, 261 F.3d at
6 857.

   4. <u>Conclusion</u>

  Based on the foregoing, the Court finds that the ALJ did not provide clear and convincing reasons, supported by substantial evidence in the record, to reject Plaintiff's subjective pain and symptom testimony.

  **B.** **Remand**

  Plaintiff seeks to have her testimony credited as true and for this action to be remanded for payment of benefits. Defendant argues that, should remand be necessary, the action should be remanded for further administrative proceedings.

  The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. <u>Treichler</u>, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.'" <u>Garrison</u>, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. <u>Treichler</u>, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. <u>Garrison</u>, 759 F.3d at 1019.

  The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, the record casts doubt on whether Plaintiff is disabled. Plaintiff testified that she is able to work on the days that her symptoms are controlled by her medication. But, Plaintiff's testimony as to what her daily activities entailed on a day that she had a flare up was vague. Plaintiff testified that she had random flare ups that had multiple different causes. (AR 48-49.) During a flare up her body would ache from her neck to her toes and her hands and feet swell. (AR 49.) Plaintiff testified that during the morning she would not really be out of bed, however she also testified that she did not get up until after 11:30 a.m. on a typical day. (AR 49, 54.) On a bad day she can only lift 5 pounds and cannot walk three blocks. (AR 57-58.) Further development is needed to determine if Plaintiff retains the physical capacity to work on a day when her symptoms have flared up.

If on remand, in addition to inconsistencies with objective evidence and clinical evaluations, the ALJ provides other clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony, such as that Plaintiff's symptoms are controlled with medication, then the inconsistencies with objective evidence and clinical evaluations may be a proper reason for rejecting Plaintiff's credibility.

Accordingly, the Court finds that there is an outstanding issue that needs to be resolved by the Commissioner; and this action shall be remanded for further proceedings consistent with

this opinion.

## V.
## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED;
2. Defendant's cross motion for summary judgment is DENIED;
3. This action is REMANDED back to the Commissioner for further administrative proceedings consistent with this opinion;
4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Yvonne Vigil and against Defendant Commissioner of Social Security; and
5. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **September 14, 2017**

UNITED STATES MAGISTRATE JUDGE